IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JANET LAWRENCE; and
JAMES LAWRENCE                                                          PLAINTIFFS

v.                              No. 4:20-cv-549-DPM

CHRIS RINGGOLD, Individually;
RACHELLE STEWART, Individually
and in her Official Capacity as Deputy
Sheriff for Saline County, Arkansas;
and ROBERT HIGH, Individually
and in his Official Capacity as Deputy
Sheriff for Saline County, Arkansas                                     DEFENDANTS

ORDER

1. Janet and James Lawrence claim their Fourth and Fourteenth Amendment rights were violated when Saline County Sheriff's deputies raided their arcade business in Mabelvale and arrested Mrs. Lawrence. In January 2017, the Internal Revenue Service contacted Detective Chris Ringgold of the Little Rock Police Department about suspected illegal gambling activity in Saline County. The Lawrences' arcade—Just for Fun Gameroom—was one of the suspected gambling houses. Detective Ringgold relayed the IRS's information to Saline County law enforcement, and the Sheriff's office asked him to investigate. After an undercover investigation, Detective Ringgold reported to Deputy Rachelle Stewart about Just for Fun's

operations. Deputy Stewart applied for, and received, a warrant based on the reports. Deputies Robert High and Amanda Powell McClain executed the warrant, seized the business's game machines and surveillance system, and arrested Mrs. Lawrence. The Lawrences say that the warrant was invalid because Detective Ringgold's reports were false and that the deputies illegally destroyed the surveillance system to conceal exculpatory evidence. They seek a trial on their 42 U.S.C. § 1983 and Arkansas Civil Rights Act claims, while all the defendants request summary judgment. Where some genuine dispute of material fact exists, the Court takes the record in the Lawrences' favor. *Oglesby v. Lesan*, 929 F.3d 526, 532 (8th Cir. 2019).

2. Detective Ringgold seeks qualified immunity. That is a solid defense if the facts, viewed in light most favorable to the Lawrences, fail to make out a constitutional violation that was clearly established at the time of his alleged misconduct. *Watson v. Boyd*, 2 F.4th 1106, 1109 (8th Cir. 2021). On a *Franks*-type § 1983 claim, Detective Ringgold is also entitled to qualified immunity if, absent his alleged false statements and including his alleged omissions, probable cause still would have existed to support the warrant. *Bagby v. Brondhaver*, 98 F.3d 1096, 1099 (8th Cir. 1996). The Lawrences had a clearly established right to be free from an unreasonable search of their business and seizure of their persons and things. U.S. CONST. AMEND. IV.; *United States v. Koons*, 300 F.3d 985, 990 (8th Cir. 2002). The Court accepts Detective

Ringgold's concession that an intentional or reckless misstatement or omission by an officer who did not seek or apply for a warrant could be a constitutional violation. *Herring v. United States*, 555 U.S. 135, 139–40 (2009); *Small v. McCrystal*, 708 F.3d 997, 1006–08 (8th Cir. 2013). But, on this record, no reasonable juror could conclude that his statements were false.

The Lawrences argue hard that Detective Ringgold falsely reported that he exchanged credits for cash during his investigation. Ringgold's reports, however, do not mention exchanging credits for cash. *Doc. 38-3 at 6–14*. Deputy Stewart's affidavit states that Detective Ringgold " 'cashed out' of [a] game by collecting $2.00 on his card[.]" *Doc. 34-3 at 19*. The affidavit could have been clearer. The context nevertheless reveals that Detective Ringgold collected credits on his card, not cash, from the game machine. And nobody—including the judge who issued the warrant, *Doc. 44-6 at 39–40*—understood "cashed out" to mean that Detective Ringgold received cash for credits. Arkansas courts have similarly described receiving representations of credit value in this context as "cashing out." *E.g., Paris v. State*, 87 Ark. App. 344, 346, 192 S.W.3d 277, 279 (2004). Detective Ringgold did not represent in his reports that he received cash for credits, and the Lawrences therefore cannot establish a constitutional violation based on the loose language of Deputy Stewart's affidavit. *United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008).

The Lawrences also argue that Detective Ringgold misrepresented the value of a knock-off YETI mug that he received for redeemed credits. Again, the reports do not mention the value of the mug. *Doc. 38-3 at 6–14*. Neither does Deputy Stewart's affidavit. *Doc. 34-3 at 18–21*. The affidavit alleges a violation of ARK. CODE ANN. § 5-66-103. *Doc. 34-3 at 18*. That statute is about keeping a gambling house. It's true that Judge McCallister testified that—in hindsight and with no recollection of this particular warrant, *Doc. 44-6 at 8*—he believed he wouldn't have signed the warrant if he'd known the mug's wholesale value was less than $12.50. *Doc. 44-6 at 35*. Despite that testimony, the value of the mug had no bearing on whether Just for Fun's operations violated the only statute specified in Deputy Stewart's affidavit. Deputy Stewart's testimony is consistent on that point. *Doc. 44-5 at 23–25*. The officers are not responsible for any misapprehensions the judge may have had. To the extent the Lawrences argue that Detective Ringgold intentionally or recklessly omitted the value of the YETI-like mug in his reports, the mug's value simply wasn't critical to a probable-cause finding. *United States v. Smith*, 581 F.3d 692, 695 (8th Cir. 2009). Detective Ringgold collected the mug as potential evidence against Just for Fun and the Lawrences. He included that fact in his report. But there isn't sufficient proof in this record for a reasonable jury to conclude that the warrant issued as a result of any misrepresentation that Detective Ringgold made about the mug or its value.

Detective Ringgold is entitled to qualified immunity on all the Lawrences' claims against him because the Lawrences have not shown that he committed any constitutional violation. The Court also concludes that, disregarding the alleged misrepresentations and considering the alleged omissions, there was probable cause to issue the search warrant because Just for Fun's gaming machines functioned like slot machines, which ARK. CODE ANN. § 5-66-103(a)(2) forbids. *Sharp v. State*, 350 Ark. 529, 533-35, 88 S.W.3d 848, 851-52 (2002). It was objectively reasonable for all the officers involved with this warrant to believe that these machines violated Arkansas law. *Walden v. Carmack*, 156 F.3d 861, 869-70 (8th Cir. 1998). And whatever prompted deputies to arrest Mrs. Lawrence during the search is not attributable to anything that Detective Ringgold did or didn't do.

**3.** As pleaded, the Lawrences' due process claims against Deputies Stewart and High, and their *Monell* claims, are limited to the loss or destruction of their surveillance system. *Doc. 2 at 3-4*. Deputies Stewart and High correctly point out that the Lawrences' expansion of those claims in their briefing to challenge the seizure itself is inappropriate. The Lawrences haven't moved to amend their complaint to add a Fourth Amendment claim against Deputy High or Deputy McClain, who the Court already dismissed as a defendant, *Doc. 29*. And the Court declines to invite a belated motion to cure in these circumstances. *Meehan v. United Consumers Club Franchising Corp.*, 312

-5-

F.3d 909, 913–14 (8th Cir. 2002). The Court will therefore only consider the merits of the surveillance-equipment-related claims the Lawrences did plead.

Mrs. Lawrence presses *Brady* violations under § 1983 against Deputies Stewart and High. She claims they destroyed evidence to secure her conviction. The Court assumes that the lost videos might have been helpful to her in some material way. The type of misconduct Mrs. Lawrence alleges, however, does not offend the Fourteenth Amendment's due process clause unless it results in a conviction. *Livers v. Schenck*, 700 F.3d 340, 359 (8th Cir. 2012). The charges against Mrs. Lawrence were dismissed.

Her claims of bad faith are too thin to make out a constitutional violation in any event. The Court cannot infer bad faith solely from the fact that evidence was lost or destroyed. *McKay v. City of St. Louis*, 960 F.3d 1094, 1100 (8th Cir. 2020). There is no record evidence that any of the defendants intended to deprive Mrs. Lawrence of a fair trial. *Stewart v. Wagner*, 836 F.3d 978, 982 (8th Cir. 2016). She acknowledges she doesn't have any. *Doc. 34-4 at 17*. She argues instead that the Court should infer bad faith from all the circumstances.

First, she argues that the surveillance equipment was outside the scope of the warrant, and therefore the deputies had no legitimate reason to seize it. Even assuming the warrant's scope did not include this equipment, it does not follow that the deputies seized it to conceal

evidence. The surveillance system was reasonably related to the suspected crime; it could provide evidence of the persons involved with the allegedly illegal activity that the warrant described. *Thiel v. Korte*, 954 F.3d 1125, 1128 (8th Cir. 2020). The seizure itself is not evidence from which a reasonable juror could infer bad faith.

Second, Mrs. Lawrence points to the County's offer to pay her and Mr. Lawrence for the lost surveillance equipment in exchange for a release from liability. *Doc. 45 at 10*. There is nothing about a generic attempt at an out-of-court settlement, though, that demonstrates official animus or a conscious effort to destroy exculpatory evidence. *Jimerson v. Payne*, 957 F.3d 916, 926 (8th Cir. 2020). At most, the settlement offer demonstrates that the County believed that the Lawrences had a colorable claim for damages up to the value of their surveillance system. The Court is unwilling to discourage otherwise permissible negotiations by concluding that they support an inference of bad faith in these circumstances. *Compare* FED. R. EVID. 408.

Mrs. Lawrence hasn't come forward with sufficient evidence for a reasonable jury to conclude that Deputies Stewart or High acted with the requisite state of mind for her to recover damages against them under § 1983. Even if she had, her *Brady* claims would still fail because she was not convicted. The Lawrences haven't pleaded a Fifth Amendment due process violation in relation to their lost equipment. But even if the Court granted them leave to do so, that claim would also

fail because they didn't exhaust their post-deprivation state law remedies. *Walden*, 156 F.3d at 874. Without an underlying constitutional violation, the Lawrences' *Monell* claims fail as well. *Malone v. Hinman*, 847 F.3d 949, 955–56 (8th Cir. 2017).

**4.** The Lawrences ask the Court to dismiss their parallel state law claims without prejudice. They do not argue that those claims require a separate analysis, and the Court concludes that they do not. *Lewis v. Jacks*, 486 F.3d 1025, 1030 (8th Cir. 2007). The qualified immunity standards under Arkansas law are the same as under federal law. *Blevins v. Hudson*, 2016 Ark. 150, at *6–7, 489 S.W.3d 165, 169–70. The Arkansas Supreme Court has made some distinctions between the state constitution and the federal constitution, *e.g.*, *State v. Brown*, 356 Ark. 460, 156 S.W.3d 722 (2004), but not when it comes to *Franks* and *Brady*. *Hester v. State*, 362 Ark. 373, 387, 208 S.W.3d 747, 754–55 (2005); *Howard v. State*, 2012 Ark. 177, at *8–9, 403 S.W.3d 38, 44–45. The ACRA claims will therefore be dismissed with prejudice for the same reasons as the § 1983 claims.

\* \* \*

The deputies' motion, *Doc. 33*, is granted. Detective Ringgold's motion, *Doc. 36*, is granted. Judgment will issue.

So Ordered.

*WPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

*14 June 2022*